**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STEVEN KOLODGE and KATHLEEN KOLODGE<br><br>Plaintiffs,<br><br>v.<br><br>MENARDS MOVING & STORAGE, LLC, JOSEPH MENARD, and GOOD VIEW MOVING & STORAGE LLC,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No.: 4:25-cv-03763<br>Hon. David Hittner |

**DEFENDANT GOODVIEW MOVING & STORAGE LLC'S
MOTION TO DISMISS PLAINTIFFS' VERIFIED
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Defendant Goodview Moving & Storage LLC ("Goodview"), by and through undersigned counsel, respectfully moves to dismiss Plaintiffs Steven Kolodge and Kathleen Kolodge's Verified Complaint for Emergency Injunctive Relief and Damages (the "Complaint") (Doc. 1) in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support thereof, Goodview states as follows:

## INTRODUCTION

This action stems from a routine interstate household goods shipment from Verdi, Nevada, to Conroe, Texas, governed exclusively by the Carmack Amendment, 49 U.S.C. § 14706. Plaintiffs allege federal claims under the Carmack Amendment and the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. § 1962), alongside state-law claims for fraud (including fraudulent misrepresentation), conversion, breach of bailment, breach of contract, negligence and gross negligence, unjust enrichment, and violations of the Texas Deceptive Trade Practices Act

("DTPA")[1], seemingly seeking emergency injunctive relief to return allegedly undelivered goods and damages exceeding $1,000,000.

The Complaint must be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) because all claims are moot. The entire shipment was fully delivered on August 23, 2025, which was four days prior to service of the Complaint on Goodview on August 27, 2025, with no outstanding goods, disputes at delivery, or ongoing harm, eliminating any basis for injunctive relief or live controversy.

In the alternative, the Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6). The Carmack Amendment preempts the state-law claims in their entirety, as they arise directly from the carriage of goods in interstate commerce. The RICO claim is implausibly pleaded, lacking any enterprise, pattern of racketeering, or predicate acts of fraud. Even if not preempted or moot, the claims fail on the merits as the signed Interstate Bill of Lading ("BOL") expressly limits liability to 60 cents per pound per article, no high-value items were declared, delays were compensated per tariff (with a $1,325 refund offered and refused), and communications demonstrate transparency and good faith, refuting allegations of concealment, extortion, or misrepresentations.

Dismissal with prejudice is warranted, as the undisputed facts render amendment futile. Goodview requests an award of costs and such other relief as the Court deems just.

## STATEMENT OF FACTS

Where subject matter jurisdiction is being challenged, "no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *See Montez v. Dep't of Navy*,

[1] Count V for Breach of Contract is not alleged against Goodview.

392 F.3d 147, 149 (5th Cir. 2004). The following facts are drawn from the Complaint[2], attached exhibits (including the BOLs, inventories, payment records, and communications), and undisputed client-provided documentation.

Plaintiffs engaged Menards Moving & Storage LLC ("Menards") as a broker for their interstate move. Menards, holding USDOT No. 4072455 and lacking carrier authority (as confirmed by the FMCSA SAFER system, **Ex. B**), assigned Goodview (USDOT No. 3883187, MC No. 1425325) as the actual carrier. Goodview entered into a direct contract with Plaintiffs via the BOL signed by Steven Kolodge on May 28, 2025 (not May 26 as alleged in the Complaint). (**Ex. A**: BOL V6251731). The BOL establishes privity, outlines terms (including a 21-business-day delivery window from the first available date), and includes Plaintiffs' explicit waiver of Full (Replacement) Value Protection, electing instead the minimal Released Value of 60 cents per pound per article. No high-value items, such as the 1929 Kimball Grand Piano, prescription medications, medical devices, family heirlooms, legal/financial documents, or photo albums, were declared on the BOL or extraordinary inventory sheet, despite clear requirements. (**Ex. A**) The estimated volume was 3,200 cubic feet at $2.50 per cubic foot, with a binding estimate of $8,000.

Pickup occurred without incident on May 28, 2025, in Verdi, Nevada. All items were loaded per the inventory, with no increases in volume, weather issues, delays, or disputes noted. (**Ex. A**: Inventory Sheets, signed by Steven Kolodge with no exceptions at origin). The shipment was briefly stored in a secure facility on Valley Road in Reno, Nevada, awaiting coordination with an interlining agent due to high summer demand. No mechanical breakdowns occurred, including the alleged "breakdown in New Mexico," which was a fabrication not supported by any Goodview

---

[2] Goodview was unable to cite specifically to the location of the allegations taken from the Complaint, because Plaintiffs chose not to include Paragraph numbers in their pleading.

communication or record and was instead an interlining agent that delayed Plaintiffs' shipment but was not holding Plaintiffs' items.

On or around June 21, 2025, an interlining agent became available. Partial delivery was made on June 25, 2025, in Conroe, Texas, comprising the majority of the shipment. The remaining items (approximately four) were not "held" but left due to insufficient space on the first truck, a logistical issue communicated to Plaintiffs. These items were transported by Goodview truck from Reno to Las Vegas, Nevada, for expedited interlining. The balance due at delivery ($3,887.50) was collected per the BOL terms, with no disputes raised by Plaintiffs at the time. Payments included: $1,000 via Zelle on May 28; $1,000 on May 29; $1,000 on May 30; $887.50 on May 31 (totaling 50% deposit of $3,887.50 at pickup); and the remainder at first delivery. (**Ex. C**: Payment Records).

Post-pickup interactions were challenging due to Plaintiffs' aggressive behavior (yelling, cursing, multiple calls from different numbers), but Goodview maintained transparency. Emails from representative "Amy" explained the delays as logistical (agent availability and truck space), assured safety and possession of goods, and withheld the exact storage addresses for security reasons (shared facilities with other clients' belongings). (**Ex. D**). General locations (e.g., Reno) were provided, and updates were promised as available. Goodview offered $1,325 compensation for the delay (exceeding 21 business days per tariff: $25/day for 53 days), which Plaintiffs refused. (**Ex E.**) Plaintiffs were directed to the CSI claims department for any damage claims, clarifying that it handles moving-specific claims (not insurance). (**Ex. F**) No "false statements" about breakdowns were made by Goodview.

The full shipment was delivered on August 23, 2025, with no noted damage or missing items on the inventories. Plaintiffs refused to sign the delivery acknowledgment but accepted the goods. All services were completed, and no items remain in Goodview's possession.

The Complaint, filed August 12, 2025, uses incorrect DOT/MC numbers for Goodview (alleging #3921793/#1459967 instead of the correct #3883187/#1425325) and pleads nondelivery, fraud, concealment, and a RICO "scheme" based on purported wire fraud. These allegations are refuted by the records. Delays were logistical, not extortionate. The goods were delivered pre-service. Communications show good faith, not deceit.

## LEGAL STANDARD

Under Rule 12(b)(1), the Court may dismiss a Complaint for lack of subject-matter jurisdiction, including mootness, and may weigh evidence beyond the pleadings. *Montez*, 392 F.3d at 149; *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (a case becomes moot when there is no live controversy).

Under Rule 12(b)(6), dismissal is proper if the complaint fails to plead plausible facts entitling relief, beyond speculation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Preemption and futility of amendment are appropriately resolved here. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772-73 (5th Cir. 2003).

## ARGUMENT

### I. ALL CLAIMS ARE MOOT UNDER RULE 12(b)(1)

A case becomes moot when events eliminate the plaintiff's personal stake, rendering judicial relief ineffective. *Already, LLC*, 568 U.S. at 91. Injunctive relief requires imminent, irreparable harm, not past grievances. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)

(standing to seek an injunction depends on whether someone is likely to suffer future injury). Plaintiffs' damages claims are moot if there is no ongoing loss.

The core of the Complaint is a request for injunctive relief to locate, disclose, and return held goods, which is moot. Full delivery occurred on August 23, 2025, before service, with all items (including alleged high-value ones) released without exception. No goods remain undelivered, no concealment persists, and any delay is compensable per the terms of the parties' written agreement, with Goodview offering Plaintiffs relief under the applicable BOL and Plaintiffs rejecting same. *See Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 307 (5th Cir. 1993) (federal law, via the Carmack Amendment, preempts state law claims and limits liability to the provision in the BOL). The Carmack claim for loss and/or delay separate and apart from the relief allowable under the subject BOL is moot absent separate current harm, which has not been alleged and could not be proven. This mootness includes the state-law claims for breach of bailment, breach of contract, negligence and gross negligence, and unjust enrichment, all of which depend on alleged nondelivery or mishandling that has been fully resolved.

Even if the Carmack Amendment did not preempt the various other claims in the Complaint, those claims (fraudulent misrepresentation, deceptive trade practices, conversion, and RICO) are also moot, as they rely on the resolved nondelivery. No live controversy exists and thus dismissal for mootness is mandatory.

## II. THE STATE-LAW CLAIMS ARE PREEMPTED BY THE CARMACK AMENDMENT

The Carmack Amendment preempts state claims "arising from" interstate carriage, providing the sole remedy for loss, damage, or delay. 49 U.S.C. § 14706; *See Hoskins*, 343 F.3d at 778 ("Congress intended for the Carmack Amendment to provide *the exclusive cause of action*

*for loss or damages to goods arising from the interstate transportation of those goods by a common carrier*. Accordingly, we hold that the complete pre-emption doctrine applies.") (Emphasis in original); *Tran Enters., LLC v. DHL Express (USA), Inc.*, 627 F.3d 1004, 1008-09 (5th Cir. 2010). Plaintiffs' fraud, conversion, and DTPA claims allege deceptive communications, withholding for payment, and unfair practices, all inextricably linked to the shipment's handling, delay, and delivery. These are preempted. This preemption applies equally to Plaintiffs' claims for breach of bailment (Count III), which alleges a failure to return goods safely but is directly tied to the interstate carriage and negligence and gross negligence (Count VI), which allege reckless handling and abandonment but are preempted as they seek to impose liability for damage or delay in transit, and unjust enrichment (Count VII), which seeks restitution for retained funds or goods but is inextricably linked to the contractual terms of the interstate move. All such claims are barred, as they do not involve separate harms independent of the shipment process.

Additionally, the BOL governs exclusively, with arbitration via CSI for disputes. (**Ex. A** at 2).

## III. THE RICO CLAIM FAILS TO STATE A CLAIM

RICO requires an "enterprise" conducting a "pattern of racketeering activity" (e.g., wire fraud) causing injury. 18 U.S.C. § 1962(c). A pattern demands continuity (ongoing threat) and relatedness, not isolated acts. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); Torres v. S.G.E. Mgmt., LLC, 838 F.3d 629, 637 (5th Cir. 2016).

The Complaint alleges a vague "enterprise" between Defendants for wire fraud and concealment, but pleads no structured enterprise beyond a single move, no continuity (the allegations concern a one-off transaction), and no predicates. Plaintiffs' claim that "Defendants have engaged in these or similar acts with other victims nationwide" is conclusory and not

supported by any facts or evidence. Plaintiffs have no personal knowledge of any "enterprise" or "pattern of racketeering activity" and certainly failed to sufficiently plead same. The reality of this one-off transaction is that communications were honest (delays were explained and refunds were offered), locations were withheld for security, and there was no intent to defraud. Furthermore, Menards acting strictly and solely as a broker in the one-off transaction refutes any possibility that there was a "coordinated scheme." (**Ex. B**). The claim is speculative and must be dismissed.

## IV. THE CARMACK CLAIM FAILS OR IS SEVERELY LIMITED

Even if the Plaintiffs' Carmack claim is not moot for the reasons set forth above, it still must fail for any of the following reasons: (i) there was full delivery of the items without noted damage (the inventories were clean); (ii) there was no timely CSI claim filed despite directions provided by Goodview to Plaintiffs as well as the clear language found within Section 6 of the BOL (**Ex. A**: "As a condition precedent to recovery, a claim for loss, damage, delay, overcharge or property damage must be filed in writing with carrier or with CSI … within nine (9) months after delivery to consignee as show on the governing Bill of Lading, or in case of failure to make delivery, within nine (9) months after a reasonable time for delivery has elapsed."); and (iii) Goodview's liability is capped at 60 cents/lb. Plaintiffs' refusal of Goodview's $1,325 offer, constituting compensation for delay, further undermines any alleged harm.

## <u>CONCLUSION</u>

The Complaint is moot, preempted, and implausibly pleaded. Dismissal with prejudice is required, as facts preclude viable amendment.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Goodview prays the Court grant this Motion, dismiss the Complaint with prejudice, award costs/fees, and grant further relief as appropriate.

Dated: September 17, 2025

/s/ *Darren A. Heitner*
Darren A. Heitner, Esq.
(Fl. Bar No. 85956)
**HEITNER LEGAL, P.L.L.C.**
215 Hendricks Isle
Fort Lauderdale, FL 33301
Telephone: 954-558-6999
Darren@HeitnerLegal.com